## WEBB *v.* STATE
[No. 43, October Term, 1952.]

*Decided December 5, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*Z. H. Stafford,* with whom was *LeRoy L. Wallace,* and *John W. Williams,* on the brief, for appellant.

*Kenneth C. Proctor,* Assistant Attorney General, and *Harry E. Clark, Jr.,* State's Attorney for Talbot County, with whom was *J. Edgar Harvey,* Deputy Attorney General, on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

On an indictment containing two counts, assault with intent to kill and murder, and common assault, the appellant was found guilty on the first count by the court, sitting without a jury, and sentenced to five years in the Maryland House of Correction. The appellant contends that the court erred in refusing his motion for directed verdict at the close of the whole case, and that the sentence was "cruel and unusual" under the circumstances.

The testimony shows that the appellant, a resident of Easton, Maryland, had been "going with" one Reba Brooks for about four years, and on the night of Saturday, March 28, 1952, had invited her to come to his dance hall. However, she went to the movies in Cambridge with one Edward St. Clair, and at about 1:30 in the morning of March 29, was sitting in front of her home in St. Clair's car. The appellant came up, ordered her out of the car and drew a pistol, to frighten them, he says. He just happened to have the pistol because he had taken a sum of money from the dance hall to his home before coming past Reba's house, where she lived with her aunt and grandmother. The pistol certainly frightened St. Clair, for he got out of the far side of the car and took shelter. Reba got out and started towards the house. The appellant held on to her arm and attempted to drag her up the street.

Reba's aunt, Mamie Brooks, was in the house with her friend Daniel Copper. Hearing a commotion outside, they came out, and Mamie caught hold of Reba's arm and tried to pull her away from the appellant. The appellant told her to let go or he would shoot. Reba said, "He's got a gun." Mamie testified that she did not believe he had a gun, or if he had, that he would shoot. He said a second time, "Let go of her. If you don't I am going to shoot." There was a flash and Mamie was shot through the neck, the bullet just missing the jugular vein. However, she was taken immediately to the hospital by Daniel Copper and her life was saved.

Although three witnesses testified that the appellant had twice threatened to shoot before the shot was fired, the appellant denied that he made any such statements. His testimony was that he clicked the pistol twice to remove the cartridges, that he thought it was unloaded and did not intend to shoot. Reba and Mamie both testified they heard clicks before the shot, and one cartridge was found at the scene by a police officer. It is difficult to understand how the weapon could be unloaded in this fashion, if it was an automatic as the appellant asserted.

The weapon was never found. The witnesses all agreed that after the shooting the appellant asked, "Did I shoot you?" He came in the house and expressed his concern. The grandmother testified she saw him unload the pistol and put the bullets in his pocket before he left. The police were called but he was not apprehended. He gave himself up the next morning.

The appellant contends that upon all the evidence in the case there was no proof of a felonious intent to kill and murder, and no proof of malice aforethought. Murder is still a common law crime in Maryland, although it is divided into two degrees carrying different penalties by Sections 494-501, Article 27 of the Code of 1951. *Hanon v. State,* 63 Md. 123, 126; *Abbott v. State,* 188 Md. 310, 52 A. 2d 489; *Wood v. State,* 191 Md. 658, 62 A. 2d 576. Likewise, Section 14, Article 27 of the Code of 1951, which provides that "every person convicted of the crime of an assault with intent to murder shall be guilty of a felony and shall be sentenced to confinement in the Maryland Penitentiary for not less than two years nor more than fifteen years", does not attempt to define the elements of the crime.

To support a charge of assault with intent to murder it is generally recognized that there must be proof of both an assault and an intention to murder. The intent cannot be inferred from the mere fact of the assault, although the character of the assault and the use of a deadly weapon are factors to be considered. *Acers v. United States,* 164 U. S. 388, 17 S. Ct. 91, 41 L. Ed. 481, and note. Neither can the intent be established as a matter of law from the mere use of a deadly weapon. *Lanier v. The State,* 106 Ga. 368; *Hochheimer, Criminal Law* (3rd Ed.) Section 29. *Wharton, Criminal Law* (12th Ed.) Section 841 says: "On an indictment for an assault with intent to murder, the intent is the essence of the offense. Unless the offense would have been murder, either in the first or second degree, had death ensued from the stroke, the defendant must be acquitted of this particular charge. * * * It is not

necessary, however, to sustain such an indictment that a specific intent to take life should be shown. If the intent were to commit grievous bodily harm, and death occurred in consequence of the attack, then the case would have been murder in the second degree; and, in case of death not ensuing, then the case would be an assault with intent to commit murder in the second degree. And if the intent were to kill in hot blood, or to kill one erroneously believed to be an aggressor, then the defendant may be convicted of an assault with intent to commit manslaughter." In *Wharton, Criminal Evidence* (11th Ed.) Section 79, it is said: "If intent is an element, the State must introduce evidence to show it. However, since intention is a fact which cannot be positively known to other persons, no one can testify directly concerning it and the matter must be an inference which the jury must find from established facts."

In *Fenwick v. State,* 63 Md. 239, recognizing that intent to murder was "a material fact set forth in the indictment", it was held that the trial court erred in refusing to permit the accused to be interrogated as to his purpose in obtaining the weapon, in that case an ax. That an accused is competent to testify as to his intent is generally recognized. See *Wharton, Criminal Evidence* (11th Ed.) Section 315. It does not follow that such testimony is conclusive upon the trier of facts.

In the instant case it can hardly be denied that the accused drew his weapon in the first instance to intimidate and enforce compliance with his orders and to resist interference. It may also be inferred from the fact, if believed, that he twice threatened to shoot unless the victim desisted from her efforts to drag Reba into the house, that he intended to carry out the threat. We cannot find that the trial judge, who saw and heard the witnesses, was clearly wrong in disbelieving the story of the accused, who had spent several years in the army and was presumably familiar with firearms, that the discharge of the weapon was accidental, or that

he did not intend to shoot. The evidence supports an inference that he intended to shoot the prosecuting witness as he had threatened to do.

Nor can we find that the trial judge was clearly wrong in finding that the intent was to commit murder as distinguished from manslaughter. The principal distinction between murder and manslaughter at common law is the presence or absence of malice. *Neusbaum v. State,* 156 Md. 149, 155, 143 A. 872. *Wharton, Criminal Law,* (12th Ed.) Section 423, says: "Manslaughter is distinguished from murder by the absence of deliberation and malice aforethought. * * * It is not the weapon used, nor the intention to kill, which fixes the grade of the crime, but the uncontrollable passion, aroused by adequate provocation, which for the time being renders the accused incapable of reasoning and unable to control his actions." There was no evidence here that the accused had any adequate provocation, or that his passion was uncontrollable. An act may be deliberate enough to show malice, although there is no appreciable interval of time between the determination to act and the act itself. *State v. Fenik,* 45 R. I. 309, 121 A. 218, 221; *State v. Pierce,* 4 N. J. 252, 72 A. 2d 305, 313. For present purposes we need not consider whether, had death ensued, the appellant could have been convicted of murder in the first degree for a "wilful, deliberate and premeditated killing", or merely of another "kind of murder" comprehended in the second degree. It is sufficient to state that we think the evidence supports a finding of malice.

The contention that the punishment was cruel and unusual was not pressed in argument, and we think it is without merit. *Cf. Heath v. State,* 198 Md. 455, 466-467, 85 A. 2d 43, 49, and *Delnegro v. State,* 198 Md. 80, 88-90, 81 A. 2d 241. The sentence of five years was well within the statutory limit.

*Judgment affirmed, with costs.*