## BEALL *v.* STATE
[No. 45, October Term, 1953.]

*Decided December 9, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Ignatius J. Keane,* with whom was *Joseph A. DePaul* on the brief, for appellant.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General, Carlyle J. Lancaster, State's Attorney for Prince George's County,* and *Wilmer D. Pyles, Assistant State's Attorney,* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Richard L. Beall, appellant, from judgments and sentences on two indictments charging him on September 28, 1952, with the statutory crime of assault with intent to murder Roy V. Lilly and his wife, Joyce Lilly. Code, 1951, Article 27, Section 14.

The indictments each contained two counts, the first charging the appellant with assault with intent to kill and murder Roy V. Lilly, and the second with assault and battery on Roy V. Lilly. In the other indictment he was charged on the first count with assault with intent to kill and murder Joyce Lilly, and in the second count with assault and battery on Joyce Lilly. From verdicts of guilty and sentences thereon under the first count of each indictment, he appeals to this Court. Thomas Parke was indicted on the same charges, found

guilty, and sentenced for assault with intent to kill and murder Roy V. Lilly and Joyce Lilly on the same date. The Beall and Parke cases were tried together by the trial judge sitting without a jury. However, Thomas Parke did not appeal.

The uncontradicted testimony shows, for the purpose of these cases, that shortly after 7 P.M. on September 28, 1952, Richard Beall, the appellant, went into a tavern in Mt. Rainier, Maryland, where he started drinking whiskey and beer. About 11 P.M. that evening Thomas Parke went to the same tavern and was invited by Beall to have a drink. Parke drank beer with Beall. About one o'clock A.M. Beall invited Parke to his home. They walked a distance of about three blocks to 4116 29th Street, the home of Beall's father-in-law, Mr. McAllister. Beall told Parke to wait in front of the house. Beall then went to the back door of that house, broke a large pane of ·glass in the back door, reached in and unlocked the door. He then went to the front room on the second floor and removed a loaded revolver from a box. He came out of the house. When asked by Parke about the crash of glass he had heard, Beall said he broke the glass to get in the house and that he had a gun. Beall told Parke to come with him. They walked across the street and Beall started toward the Lilly house at 4111 29th Street. Parke then started to wrestle with Beall and told him that he knew he did not live "in all these places". Beall put his hand in his pocket and ran up on the porch at 4111, the home of Mr. and Mrs. Lilly, who were painting in the front room of this house which they had just purchased. Mrs. Lilly was standing on the radiator in front of the double window. Mr. Lilly was standing on the floor. Mrs. Lilly saw Parke come up on the front porch. He looked "sort of glassy-eyed" to her. He knocked on the door. She told her husband that someone was at the door and "to be careful". As her husband opened the door she got off the radiator and was standing on the floor. Mr. Lilly opened the door. Mr. and Mrs.

Lilly testified that Parke said: "You better get on the floor or he will kill you." Parke testified that he said: "There is a man outside with a gun; if you don't do what he says, he will kill you." Mr. Lilly told Parke he did not believe him. He said: "I think you are kidding." He shut the door and snapped the double lock. At that time Beall jumped on the porch with a revolver in his hand, made a threatening move, and said: "Yes, and I mean it, too." Mr. Lilly called to his wife to "hit the deck", and he "took a dive into the kitchen". Beall then broke the window in the door, reached his hand in and tried to unlock the door. Mr. Lilly was in the kitchen calling for help. Beall then ran over and broke the storm glass and front window. Someone "yelled": "If you don't stay in there, he will kill your wife." Mrs. Lilly then dropped prone on the floor in front of the radiator. The broken glass fell over her while she was lying on the floor over the telephone. The men then wrestled on the front porch. Mrs. Lilly telephoned the police and Beall and Parke, apparently hearing the call, left the porch. The police had had a previous call that a gun had been stolen from 4116 29th Street. When the police arrived they found Thomas Parke walking down the sidewalk, his clothes rumpled and torn. He was intoxicated. There were a number of blood spots on his clothes. Parke asked the police to look around the neighborhood because there was a "crazy man" who was drunk running around with a gun. Parke testified that before the police came Beall stuck a gun in his ribs and told him to "move on". An automobile was coming up the street. Beall told Parke to lie down in front of a hedge and, if he "opened his mouth", he would "blow his brains out". Beall was not found until about noon at his room in Prospect Garden. Later that morning Mr. Lilly found in his front yard Beall's cigarette lighter and a bullet which fitted Mr. McAllister's revolver, and Enfield British make, 38 caliber short. Mr. Schatz, Chief of Police of Mt. Rainier, testified that the next day Beall's hand was

bandaged. Beall told him that he had taken the revolver from his father-in-law's front bedroom, broke the windows at 4111 29th Street, attempted to unlock the door and told Mrs. Lilly to lie down. He did not remember much after that time. Beall also told Mr. Schatz that he had been drinking and "just went crazy".

Beall testified substantially as follows. On September 28, 1952, he came home from his work about 6 P.M. His wife was not at home and he called her at her father's address and was told to come up there. On the way to his father-in-law's home he met a friend who asked him to "have a drink". He went in the tavern shortly after seven o'clock and started drinking beer and whiskey. Parke, whom Beall had seen before but had never talked to, came in the tavern and the two started drinking "heavily" together. They staggered down the street. Beall said he did not know Mr. and Mrs. Lilly, had no reason to go to their house, and did not see them until he was later identified by them at the police station in Hyattsville. He does not remember having a "tussle" with Parke. He remembered having his hand cut and he remembered breaking the windows and cutting his hand. He said he did not see anyone in the house. He did not remember Parke going to the door and having a conversation with Mr. Lilly. He did not remember having the gun until later nor breaking into his father-in-law's house and taking the gun. He did not know why he broke the window at the Lilly home. He admitted that he had been previously convicted of assault with intent to rape in Montgomery County.

Appellant claims the trial judge erred in overruling his motion for a directed verdict and that the verdict was "out of line" with the weight of the evidence. Apparently his counsel does not seriously contend that appellant was not guilty of assault. He contends there was not sufficient evidence of intent to kill and murder. The intent to murder cannot be inferred from the fact of a mere assault. There must be proof not only of

an assault but of an intent to murder. Nor does the threatened use of a deadly weapon establish intent to murder as a matter of law. Intent is the essence of the offense and unless that offense would have been murder in either the first or second degree, had death ensued, the defendant is not guilty of the offense charged. However, the character of the assault and the use of a deadly weapon are pertinent factors to be considered. The State must offer evidence to show the intent. However, since intent is a fact which cannot be positively known to persons other than the accused, the jury or the court sitting without a jury must find such intent from established facts. *Webb v. State,* 201 Md. 158, 93 A. 2d 80, and cases there cited. Had death ensued in this case, the offense would have been murder and not manslaughter because there is no evidence that the accused had any provocation for his actions or that the assault was committed in the heat of uncontrollable passion. If death had here ensued the evidence would certainly support the finding of malice. *Webb v. State, supra.*

As to the defense of drunkenness, we refer to *Chisley v. State,* 202 Md. 87, 95 A. 2d 577, decided March 20, 1953, where the accused was indicted for murder. Intoxication was one of his defenses. In that case this Court, in affirming the conviction, quoted with approval the following from *Warren on Homicide,* Vol. 1, Sec. 61: "The general rule of criminal law that voluntary drunkenness is no excuse for crime applies to homicide. * * * Where murder is divided into degrees, the fact of drunkenness at the time of the homicide may be considered by the jury in determining the degree of murder. * * * It is held that the mere fact that the accused was intoxicated is not sufficient to reduce the killing from murder to manslaughter." See cases there cited. See also *State v. Dolan,* 17 Wash. 499, 50 Pac. 472. In the instant case there is no testimony, other than that of Parke and Beall, as to the extent of Beall's intoxication. Every man is presumed to be in possession of his mental

faculties until the contrary is shown. As a defense to intent here the accused must show that he was so intoxicated that he was robbed of his mental faculties. He is criminally responsible as long as he retains control of his mental faculties sufficiently to appreciate what he is doing. *State v. Yates,* (Iowa), 109 N. W. 1005. Appellant apparently was sober enough and conscious enough of his actions to break into his father-in-law's home, go into the upstairs front bedroom and take the loaded revolver from a box. After he heard Mrs. Lilly telephone the police he was conscious enough of his actions to leave the porch and, when the automobile came up the street, to order Parke to hide under the hedge and threaten him with death if he "opened his mouth". He was also able to escape the police until about noon that day. Certainly his drunkenness was a question for the trial court sitting without a jury to decide. *Chisley v. State, supra.* In *People v. Connors,* 253 Ill. 266, 97 N. E. 643, where the threat to kill was made in the alternative, coupled with a condition, it was held that the evidence was sufficient to prove intent to murder. In *Peterson v. State,* (Florida), 26 So. 709, where the accused was tried for assault with intent to kill, the intent to kill the captain of a ship was held sufficiently proven when the accused, who tried to stop a ship, fired at the moving ship with a pistol, wounding no one.

In this case the accused deliberately broke into his father-in-law's home to obtain the loaded revolver. Without any excuse, he walked up on the Lilly porch. After his companion had warned Mr. and Mrs. Lilly that unless they got on the floor or did what he ordered them to do he would kill them, Beall, then on the porch with a loaded revolver in his hand, making a threatening move, stated, under all the testimony: "Yes, and I mean it, too." There was certainly sufficient evidence from which the trial judge could have concluded that Beall intended to kill Mr. and Mrs. Lilly. Their actions in locking the door, lying on the floor,

diving into the kitchen and telephoning the police, clearly show that Mr. and Mrs. Lilly believed that it was Beall's intention to shoot. Intent, being a question for the trial judge sitting without a jury, *Chisley v. State, supra,* we cannot here find that the trial judge, who saw and heard the witnesses, was clearly wrong in believing that Beall intended to shoot and kill Mr. and Mrs. Lilly. Rule 7 (c) of Criminal Rules of Practice and Procedure.

*Judgments affirmed, with costs.*