GREGORY FRANKLIN BROWN *v.* STATE OF
MARYLAND

[No. 224, September Term, 1975.]

*Decided December 30, 1975.*

468

The cause was argued before MORTON, GILBERT and MOORE, JJ.

*James F. Maher, Assigned Public Defender,* for appellant.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Gary Neal, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant was convicted by a jury sitting in the Circuit Court for Prince George's County (Loveless, J., presiding) of assault with intent to murder, armed robbery, carrying a handgun and use of a handgun in the commission of a crime of violence. He was sentenced to a total of twelve years. In this appeal it is contended, *inter alia,* that he should not have been convicted of the crimes charged because "the gun used was not loaded."

The victim, a twenty-three year old school teacher, testified that she and her mother had just driven to the front of their home at about 8 p.m. on October 24, 1974, after an evening of Christmas shopping, when she saw someone, whom she positively identified at the trial below as

appellant, riding down the street on a bicycle. After he had passed them, she and her mother began taking packages out of the car. According to the victim, appellant turned around and came back. "My purse was out of my hand. Before I realized it, it was missing. It was up in the air. My mother started screaming. And this person who was still on the bike pointed a gun at my stomach and the gun was clicked several times. Then, the person on the bike started down the street and turned around and again aimed the gun at me; then he clicked his gun several times and then I went in the house." She elaborated by stating that "after my purse was grabbed out of my hand * * * the gun [was] touching my coat."

Appellant took the stand and denied he had robbed the victim. He stated that he did not know where he was that evening: "I'm usually at home looking at television."

It is in this factual posture that appellant contends that his motion for judgment of acquittal of the charge of assault with intent to murder should have been granted on the ground that the necessary element of specific intent to murder is lacking if the gun involved is unloaded. The assertion that the gun involved was unloaded is, of course, simply a bald allegation, for the only evidence in the record before us to support the allegation is the failure of the gun to fire. The appellant denied being at the scene of the crime; the gun was never produced by the State; and the victim heard the gun clicking a number of times. Thus, it may have been loaded and simply misfired, or it may not have been loaded.

Appellant, in this appeal, contends, as he did below, "that the trial court was in error in not instructing the jury that they should first find as a matter of fact whether or not the gun was loaded and if they found that it was not loaded that they could not convict Appellant of the crime of assault with intent to murder because there was no present ability to kill and that, therefore, the essential element of intent was lacking."

The validity of appellant's contention must be weighed

against the ingredients and contours of the crime charged. Md. Code, Art. 27, § 12 provides: " * * * every person convicted of the crime of assault with intent to murder shall be guilty of a felony and shall be sentenced * * * for not less than two years nor more than fifteen years * * *." [1] It has been said:

> "To support a charge of assault with intent to murder it is generally recognized that there must be proof of both an assault and an intention to murder. The intent cannot be inferred from the mere fact of the assault, although the character of the assault and the use of a deadly weapon are factors to be considered. *Acers v. United States*, 164 U. S. 388, 17 S. Ct. 91, 41 L. Ed. 481, and note. Neither can the intent be established as a matter of law from the mere use of a deadly weapon. *Lanier v. The State*, 106 Ga. 368; *Hochheimer, Criminal Law* (3rd Ed.) Section 29. *Wharton, Criminal Law* (12th Ed.) Section 841 says: 'On an indictment for an assault with intent to murder, the intent is the essence of the offense. Unless the offense would have been murder, either in the first or second degree, had death ensued from the stroke, the defendant must be acquitted of this particular charge. * * * It is not necessary, however, to sustain such an indictment that a specific intent to take life should be shown. If the intent were to commit grievous bodily harm, and death occurred in consequence of the attack, then the case would have been murder in the second degree; and, in case of death not ensuing, then the case would be an assault with intent to commit murder in the second degree. * * *.' In *Wharton, Criminal Evidence* (11th Ed.) Section 79, it is said: 'If intent is an element, the State must introduce evidence to show it.

---

1. By Ch. 858, Acts 1975, effective July 1, 1975, the maximum penalty was increased to thirty years.

However, since intention is a fact which cannot be positively known to other persons, no one can testify directly concerning it and the matter must be an inference which the jury must find from established facts.'" *Webb v. State*, 201 Md. 158, 161-62.

In an A.L.R. annotation entitled "Fact that gun was unloaded as affecting criminal responsibility," it is asserted: "A number of courts have recognized that in the absence of proof that the gun used, as a firearm solely, in an alleged criminal assault was loaded or where the fact was shown that the gun was unloaded, the assault is not made out." Annot., 79 A.L.R.2d 1412, 1415 (1961). On the other hand, it is pointed out, a number of courts "have rejected the contention that an 'assault' could not be committed with an unloaded gun." 79 A.L.R.2d at 1417.

In some jurisdictions, statutes "define the offense of assault as involving a present ability to do harm." 79 A.L.R.2d at 1418. In such jurisdictions "the courts have taken the view that there is no such 'present ability' where the gun allegedly used in the commission of an assault was unloaded." 79 A.L.R.2d at 1418. On the contrary, other jurisdictions have held "that only the 'apparent ability' to do harm is necessary for the offense of assault and under this rule it has been recognized that the offense may be committed with an unloaded gun." 79 A.L.R.2d at 1420. *See also Ott v. State*, 11 Md. App. 259, 269.

Here, however, we are dealing, not with the offense of assault in its commonly accepted definition, but with a crime where the essential ingredient of the assault is the intention on the part of the assailant to commit murder. On the record before us, it cannot be said, with any degree of certainty, whether the gun was loaded and simply misfired, or was unloaded. The assertion by appellant's counsel that the gun involved was unloaded is simply a bald allegation without a shred of supportive evidence. The appellant denied being at the scene of the crime; the gun was never produced by the State; no description of the gun is in evidence; and the

victim simply heard the gun click a number of times. Speculatively, it could have been a toy gun, a so-called starter's gun firing only blank cartridges, or it could have been a lethal firearm. The evidence simply does not establish factually anything other than a "gun" was pointed at the victim by the appellant and she heard it click several times on two different occasions. In the absence of some evidence from which the trier of fact, in this instance the jury, could ascertain whether or not the gun was or was not loaded, or was, in fact, an operable firearm, it cannot be said, with any degree of certainty or beyond a reasonable doubt, that the appellant intended the assault upon the victim to end in murder or grievous bodily harm.

Due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U. S. 358, 364. Under the circumstances, we think the failure of the State to establish whether the gun, as used in the assault, was capable of killing the victim or inflicting grievous bodily harm constituted a fatal flaw in the proof. Accordingly, we are compelled to find that the evidence was not legally sufficient to sustain the appellant's conviction of the crime of assault with intent to murder.

It is next contended that the robbery conviction must fail because the evidence demonstrates that the victim's purse was taken from her before she saw the gun of the appellant. It is argued that larceny, rather than robbery, was the crime committed.

> "Robbery has been defined as larceny from the person, accompanied by violence or putting in fear. *Osborne v. State*, 4 Md. App. 57, 60; *Harrison v. State*, 3 Md. App. 148. Otherwise stated, robbery is 'the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear.' Clark and Marshall, *Crimes*, (6th ed.) § 12.09, p. 781; *Darby v. State*, 3 Md. App. 407, 413. * * * There is some authority for the proposition that one 'who

snatches money or a purse or other property from another's hand, if no resistance is encountered, is guilty of larceny rather than robbery.' See Perkins, *Criminal Law*, p. 236; Clark and Marshall, *supra*, p. 782." *Williams v. State*, 7 Md. App. 683, 685-86.

It is true that the victim said her purse "was out of my hand. Before I realized it it was missing." But she went on to add: "And this person who was still on the bike pointed a gun at my stomach and the gun was clicked several times." We think a fair reading of the victim's testimony leads to the conclusion that the entire transaction was simultaneously executed and that the taking of her purse was accompanied by the use of the gun. In any event, we held in *Burko v. State*, 19 Md. App. 645, 657-58:

" * * * when one commits a larceny and then displays a weapon so as to overcome the resistance of the witness, the crime is then elevated to robbery. *See* Clark and Marshall, *A Treatise on the Law of Crimes*, § 12.09 (6th ed. Wingersky rev. 1958). *See also* Perkins, *Criminal Law*, ch. 4, § 2C (2d ed. 1969) wherein it is stated, at 284:

'Furthermore, if one snatches property from the hand of another and uses force or intimidation to prevent an immediate retaking by the other, this is all one transaction and constitutes robbery.'"

We think the contention that appellant committed larceny rather than armed robbery is without merit.

Appellant finally contends that "there can be no conviction for the crime of use of the handgun in the commission of a felony if the defendant can affirmatively show that the gun was not loaded." The short answer to this contention is that the evidence failed to show that the gun was unloaded. This, however, is of little moment for we have recently held that the term "handgun" includes "any hand weapon simulating the appearance of a pistol or revolver that is capable of discharging a missile by any method of

474

propulsion." *Todd v. State*, 28 Md. App. 127, 135. The contention is without merit.

> *Judgment affirmed as to count 1 (armed robbery) in criminal trial 15131; judgments affirmed as to count 8 (carrying a handgun) and count 9 (use of a handgun in the commission of a crime of violence) in criminal trial 15073; judgment reversed as to count 6 (assault with intent to murder) in criminal trial 15073.*