699 A.2d 1204

Edward Norris GRAHAM

v.

STATE of Maryland.

No. 1798, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Sept. 8, 1997.

Joy L. Phillips, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Thomas K. Clancy, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Davis R. Ruark, State's Attorney for Wicomico County, Salisbury, on the brief), for Appellee.

Submitted before CATHELL and SONNER, JJ., and ROBERT C. MURPHY, Judge (retired) Specially Assigned.

SONNER, Judge.

A jury in the Circuit Court for Wicomico County (Warren, J.)convicted appellant Edward Norris Graham of assault with intent to murder, assault and battery, assault, use of a handgun during the commission of a crime of violence, reckless endangerment, and related handgun charges. The trial judge sentenced appellant to seven years in the Division of Correction for assault with intent to murder; five years, without the possibility of parole, for use of a handgun, to run consecutively; and one year for assault, also to run consecutively. All other convictions merged for sentencing purposes. Appellant raises two questions, which we have restated slightly:

I. Is the evidence insufficient to sustain the conviction for assault with intent to murder?

II. Did the trial court err in sentencing Mr. Graham separately on two assaults?

We answer both questions in the negative and, accordingly, affirm the circuit court.

## FACTUAL BACKGROUND

On January 12, 1996, Kevin Domenick drove to a public telephone located in the parking lot of a convenience store in Delmar, Maryland. While using the telephone, which he accessed while remaining in his automobile, he noticed a car pull into the lot in front of his car with its high beam headlights shining on his face. Thinking it was his neighbor, who drove the same model car, "horsing around," Domenick raised his middle finger in an obscene gesture. Appellant, who was driving the other vehicle, got out of the car and walked to where Domenick was sitting in his vehicle, and

asked him if he "had a problem." Domenick testified at trial that he answered, "[Y]eah, I had a problem with him pulling up in front of me and putting his high beams in my face." The two continued to exchange remarks until appellant reached into the car, grabbed his collar, and tried to hit Domenick in the face, and did graze his cheek. Domenick, telephone receiver still in hand, hit appellant with the receiver, at which time appellant stepped back from the car, pointed a gun at Domenick, and said, "I'll put a cap in your ass right now, . . ." The gun was pointed at Domenick for several seconds, after which appellant pointed it toward the ground and worked the slide of the gun. Domenick immediately threw the phone receiver out the window and put the car in drive, leaving the parking lot. As he drove away, Domenick heard a gunshot, although neither he nor his car was struck. Domenick drove to the rear of the store, parked, entered the store, called police, and gave a description of appellant and the vehicle.

When police officers arrived, they searched the parking lot and located a spent shell casing. A police officer later stopped the vehicle appellant was driving and arrested him. A search of the vehicle belonging to appellant uncovered a gun, wrapped in a towel, under the passenger seat. At trial, a firearms examiner testified that the casing recovered from the crime scene had been fired from appellant's gun.

## DISCUSSION

### I.

Appellant, in this appeal, claims that the evidence introduced at trial was insufficient to sustain the conviction for assault with intent to murder, as the mere pointing of a weapon at another does not support an inference of an intent to kill.

In reviewing a case to determine the sufficiency of the evidence to support the conviction, the court must determine whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *McMillian v. State*, 325 Md. 272, 600 A.2d 430 (1992); *Wilson v. State*, 319 Md. 530, 573 A.2d 831 (1990). The intent element of assault with intent to murder requires proof of a specific intent to kill under circumstances such that, if the victim had died, the offense would be murder. *State v. Jenkins*, 307 Md. 501, 515, 515 A.2d 465 (1986). Intent to murder is an element the prosecution is required to prove; as an evidentiary matter, however, such proof can be based upon a showing of, or inference from, certain other factors or circumstances. *Id.* at 512, 515 A.2d 465.

In determining the intent of the defendant, the trier of fact is permitted to infer the requisite intent from the surrounding circumstances. Intent is subjective, such that, without the cooperation of the accused, it cannot be directly and objectively proven. Consequently, without a statement from the accused, its presence must be shown by established facts that permit a proper inference of its existence. *State v. Earp*, 319 Md. 156, 167, 571 A.2d 1227 (1990) (quoting *Davis v. State*, 204 Md. 44, 51, 102 A.2d 816 (1954)).

Evidence showing a design to commit grievous bodily injury, such as using a deadly weapon directed at a vital part of the body, is sufficient circumstantial evidence because it gives rise to an evidentiary inference of an intent to murder. *Jenkins*, 307 Md. at 513, 515 A.2d 465. This raises the question, what is meant by the words "directed at"? Is pointing the gun sufficient, or must the gun be fired at the victim for the act to be considered to be "directed at"?

In *Hall v. State*, 69 Md.App. 37, 516 A.2d 204 (1986), this Court considered whether the evidence was sufficient to support a conviction of assault with intent to murder. That case arose out of a chase in the early morning hours by Montgomery County Police officers pursuing Lorenzo Hall, a suspect in a burglary and auto theft. The officers chased Hall on foot

into a dark, wooded area. As the officers reached the edge of the wooded area, they heard a gunshot and saw a muzzle flash. The officers dove for cover and did not enter the wooded area. The officers then heard another gunshot. Another Montgomery County police officer arrived on the other side of the wooded area and saw Hall emerge from the woods. That officer arrested Hall and recovered a handgun. The gun had a strong odor, indicating that it had been recently fired, and contained three live shells and two spent rounds.

Hall was charged and convicted on numerous counts, including three counts of assault with intent to murder, one for each of the three police officers who chased him. Judge Karwacki, sitting on this Court, wrote that the evidence was insufficient to support the convictions of assault with intent to murder:

> The record before us in the present case, however, is devoid of any evidence from which it can be inferred that the appellant acted with intent to kill the officers who pursued him. Because no one actually saw the appellant fire the gun, and there was no evidence as to the path that the discharged bullet took, no inference is permissible that the shots were even randomly directed at the officers. Applying the constitutional standard of review to these convictions of assault with intent to murder, we hold that the evidence was insufficient to establish the requisite intent essential to the crime of assault with intent to murder.

*Id.* at 47, 516 A.2d 204.

Applied to the present case, there is no evidence as to what direction appellant fired his gun or what path the bullet took. There were no witnesses who testified as to what position the gun was in when fired. There was no evidence as to where the bullet came to rest. It did not strike Domenick or his vehicle. The bullet fired by Graham may have passed through an open window of Domenick's vehicle and out through the other; however, there is still no evidence of its path. *Hall* is distinguishable from the case we have before us. Here, appellant pointed a gun at another person and made a threat to shoot that person. These facts give us some appreciation of

appellant's intention, whereas the facts in *Hall* give us nothing to show Hall's intent.

In another case from this Court, *Brown v. State*, 64 Md. App. 324, 494 A.2d 999 (1985), a suspect in a store robbery pointed a gun at an off-duty police officer in an attempt to flee the crime scene. The proven facts in that case showed nothing more than the pointing of the gun, with no verbal threat attached. This Court overturned Brown's conviction for assault with intent to murder. In doing so, the Court said, "The record, then, reveals nothing more than the mere assault itself—the pointing of the weapon—and that clearly, is not enough." *Id.* at 333, 494 A.2d 999.

The Court of Appeals, in *Shenberger v. State*, 234 Md. 363, 199 A.2d 233 (1964), considered whether the words used by appellant were sufficient to show the requisite intent. In that case, the defendant put a loaded gun to his wife's head, telling her that, after he used it on her, he was going to turn it on himself. In affirming the conviction for assault with intent to murder, the Court explained:

> If the trier of facts believed the facts to be as the wife and neighbor said they were, as he seemingly did, he properly could have found that the pointing of a deadly weapon at the head and the expressed intention to kill, followed by the struggle to again point the gun at the wife established the necessary elements of the crime assault with intent to murder. Had death ensued, the evidence would clearly have supported a finding of malice and of commission of the crime of murder.

*Id.* at 365, 199 A.2d 233.

The *Brown* court concluded that "the pointing of the deadly weapon at the head *and the expressed intention to kill,* followed by the struggle to again point the gun at the [victim] established the necessary elements of the crime of assault with intent to murder." *Brown*, 64 Md.App. at 331, 494 A.2d 999 (quoting *Shenberger*, 234 Md. at 365, 199 A.2d 233)(brackets in original). The controlling factor in raising the crime from assault to assault with intent to murder is the contempo-

raneously expressed threat to kill. Here, Graham's pointing the gun at Domenick or firing the gun cannot, without more, support the inference of an intent to kill. The record does show more. It shows that Graham stepped back, pulled out the gun, pulled the slide back, and said, "I'll put a cap in your ass right now, . . ." after which he pointed the gun at Domenick's face. Domenick then drove off, hearing the gunshot as he did so. The jury was entitled to believe the statement to be a threat by Graham to shoot Domenick. It is not our task to second guess the jury. Had Domenick died, the evidence would have been sufficient to support a conviction of murder, as the killing would have been without justification or excuse.

## II.

Appellant next claims that the trial court erred in sentencing him separately on count eight. He states that this assault charge should have merged with the charge of assault with intent to murder, as did the assault charge in count four, as a lesser included offense.

The information accused appellant of two assaults. Count four constituted the assault in which Graham pointed the gun at Domenick. Count eight was the attempted battery on Domenick resulting in the punch and grabbing of Domenick's collar. Count four correctly merged with the assault with intent to murder, as it was the assault with the gun that gave rise to that assault. The narrow issue is whether the attempted battery assault should merge with the assault with intent to murder, where the two occur during the same transaction but are unrelated in mode or method.

In *Snowden v. State*, 321 Md. 612, 583 A.2d 1056 (1991), the defendant was convicted of first degree murder, robbery with a dangerous and deadly weapon, and assault and battery. Snowden and an accomplice went to a restaurant, intent upon robbery. When an employee opened the rear door, Snowden entered the restaurant, struggled with the employee, and then shot and killed the employee. The restaurant manager, upon hearing the noise, came to the area, where he was then shot in

the arm by Snowden. Snowden then led the manager, at gunpoint, to where the money was located, after which Snowden and his accomplice left with three thousand dollars.

The issue for the court was whether Snowden's conviction for assault and battery should have merged with the armed robbery conviction. In determining whether two offenses are the same, the Court used the required evidence test. *Id.* at 616, 583 A.2d 1056. "The required evidence test 'focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter.'" *Id.* at 617, 583 A.2d 1056 (quoting *Jenkins,* 307 Md. at 517, 515 A.2d 465).

The court tried Snowden without a jury. Since there were no jury instructions, it was not clear whether his conviction for robbery was based on the pointing of the gun assault, as a lesser included offense, or the shooting of the manager battery, as a lesser included offense. If the conviction had been based on the pointing of the gun, thereby satisfying the force or threat of force requirement for robbery, then the shooting would have supported a separate battery conviction. Because the record did not reflect which set of events supported the robbery conviction, the ambiguity was resolved in favor of Snowden on appeal, with the Court of Appeals merging the assault and battery conviction with the robbery conviction. *Id.* at 619, 583 A.2d 1056.

Judge McAuliffe, in his concurring opinion, wrote:

In the case of multiple assaults or batteries the line is equally difficult to draw. Although these are common law crimes, and do not, therefore, involve legislative intent, it is appropriate in determining the propriety of cumulative punishments to employ the same basic standards of common sense and fairness that largely influence the outcome of legislative intent cases. Certainly, where one pummels another with his fists for several minutes, the law would not countenance a separate punishment for each time a blow is landed.

*Id.* at 621, 583 A.2d 1056. The test stated by Judge McAuliffe in his concurring opinion set forth two questions to be addressed in determining whether convictions merge.

First, is the conduct constituting the assault or battery for which the State seeks a separate conviction sufficiently separate from the conduct necessary to establish the "force or threat of force" element of robbery so that dual convictions offend neither a sense of basic fairness nor essential protections of the Double Jeopardy Clause? Second, does the record affirmatively show that the trier of fact, in finding the defendant guilty of robbery, did not in fact rely upon the conduct constituting the allegedly separate offense to satisfy the "force" element of the robbery?

*Id.* at 620, 583 A.2d 1056. Applied to the present case, appellant's two assault convictions were based on separate modes of assault, one with a gun and one with his hand. The record adequately shows that appellant was convicted of the assault in count eight, the attempted battery of Domenick, without it being used as a basis for the greater offense of assault with intent to murder. The record reveals that the trial court, in its instructions to the jury, clearly explained each charge, including the difference between the two assaults charged. The judge explained:

[T]here are two charges of assault, the one that is numbered as number four and the one that is numbered as number eight. You cannot find a verdict of guilty as to both of those charges unless you find there to have been two separate assaults. In other words, you can't find a person guilty of assault twice if there was only one assault.

The prosecutor, in closing argument, then explained to the jury the factual allegations supporting each of the assault charges. In some detail, the prosecutor explained that the punch thrown by appellant supported the assault in count eight and that the use of the gun supported the assault in count two, in addition to supporting the assault with intent to murder charge.

The Court earlier, in *State v. Boozer*, 304 Md. 98, 497 A.2d 1129 (1985), said that "separate acts resulting in separate insults to the person of the victim may be separately charged and punished even though they occur in very close proximity to each other and even though they are part of a single criminal episode or transaction." Certainly, the act of pointing a gun at a person is separate from the act of punching that person and, as such, each is a separate insult.

The ambiguity that disturbed the Court in *Snowden* does not exist in the present case. The jury found that there were two separate assaults, based on the evidence and instructions, such that there were two separate insults to the person of the victim. Therefore, the trial court properly sentenced appellant separately for the two counts of assault.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**