## EUGENE COUSER *v.* STATE OF MARYLAND

[No. 365, September Term, 1967.]

---

544

*Decided July 9, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Louis Peregoff* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Clewell Howell, Jr., Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

PER CURIAM.

The appellant was convicted of breaking an outhouse with intent to steal goods of the value of $100 and upwards and breaking an outhouse and stealing goods of the value of $5 and upwards at a court trial in the Circuit Court for Baltimore County. A general sentence of imprisonment for a term of 10 years was imposed.

Robert L. Clements, the owner of a retail appliance and hardware store testified that he closed his store at 9:00 P.M. on 24 April 1967. He returned to the store about 1:30 A.M. 25 April and when he arrived the police were there. "My warehouse door was open; a side window had been pulled loose and removed, and I also discovered an attempt to get into the main building also by having had a lock broken, and the wire grating removed and jimmy marks on the window". The open side window in the warehouse had been covered by a metal for sale sign fastened flush against the building with the printing on the

sign facing inside the warehouse. There was no way "to reach inside the sign between the window and the sign." The metal sign had been removed and was on the ground beneath the window it had covered. The sign had been over the window "at least two years". He had not seen the appellant before and said that the appellant had never been in the warehouse. A RCA color television set valued at $480, a RCA dehumidifier valued at $68, thirteen power lawn mowers valued at $38 each, a Hoover washing machine, copper tone in color valued at $102 and three Frigidaire air conditioners valued at $115 each were missing. A Xeroxed copy of a card containing fingerprints of the appellant was admitted in evidence by stipulation.

Corporal Edward Vanik, a Baltimore County police officer, attached to the Crime Laboratory Unit, whose duties included the processing of crime scenes for latent fingerprints, arrived at the scene of the breaking about 2:24 A.M. on 25 April. He found two latent prints on the writing side of the sign but only one had enough "points in it for identification purposes". That print was not more than one day old. It was offered in evidence for identification purposes but was never moved into evidence. Vanik further testified that he had fingerprinted the appellant at a later time and those prints were admitted in evidence.

Sergeant William B. Krause, a Baltimore County police officer assigned to the Crime Laboratory, Identification Section, had been comparing and identifying fingerprints for over 7 years. He had attended the F. B. I. Fingerprint Course, lectured on the subject and compiled a book on fingerprints used in the training of police personnel. He testified that on 21 July 1967 he compared the latent print obtained from the sign with the ink rolled prints of the appellant on the card, a copy of which had been admitted in evidence. "My conclusion was that the latent print and the left thumb of Eugene Couser was one and the same". The appellant was arrested and his fingerprints obtained. The prints obtained incident to the arrest and the ink rolled prints used in the comparison with the latent print were found to be those of "one and the same person", the appellant.

The appellant testified that he "could hardly say" where he was on 25 April 1967 but doubted that he was at the hardware store. He denied trying to break into the warehouse and his

only explanation of his thumb print on the sign was that his job "did take me out in this area * * * I junks, and I works down—I do day's work down, down near * * * Sparrows Point". But then he said that "on one particular date" when he and another man were junking in a pick-up truck he tried to get some metal signs off garages in the area. "If those are definite my prints, then it's a possibility that my prints could have been left on the sign. This is the only explanation I give for my prints being on there". On cross-examination he admitted to an extensive criminal record—a robbery conviction, two burglary convictions and convictions of assault by stabbing a police officer and carrying a deadly weapon concealed.

The appellant contends that the evidence was not sufficient to sustain the convictions because the metal sign and the lifted latent fingerprint were not introduced into evidence. We think it clear that the evidence was sufficient to prove the *corpus delicti* of the breaking with intent to steal and breaking and stealing as charged. The breaking was clearly shown. The value of what was proved to have been stolen was sufficient to show both the intent to steal goods of the value of $100 and upwards and the theft of goods of the value of $5 and upwards. And we think that there was legally sufficient evidence or rational inferences therefrom on which the trial court could find beyond a reasonable doubt that the appellant was the criminal agent. It was undisputed that the print found on the sign, which covered the window through which entrance was gained, was that of the appellant. He was therefore at the scene of the crime. The print was not more than one day old so he was at the warehouse within that period. The print was on the side of the sign that was against the building. The sign was fastened to the building so as to cover the open window in such a way that the print could be impressed from the outside of the warehouse only by removing the sign.[1] It is a rational inference therefrom that the appellant removed the sign and thus committed the

---

1. The testimony of Clements was that the sign could not be touched from the inside of the building because merchandise in the warehouse was piled in front of the window "all the time". He also said that prior to the breaking the appellant had not been in the warehouse.

breaking. As he committed the breaking he was the criminal agent. See *Lawless v. State,* 3 Md. App. 652; *McCargo v. State,* 3 Md. App. 646. We think it immaterial that the metal sign from which the latent print of the appellant was lifted and the lifted latent print were not in evidence. Testimony with regard to the sign, the finding and lifting of the latent print, its age and the results of the comparison of it with rolled inked prints of the appellant came into evidence without objection. This testimony was sufficient without the physical introduction of the sign and the latent print, and the failure to introduce them went at most to the weight of the testimony. See *Banks v. State,* 228 Md. 130. We note that the failure to place the sign and print in evidence was not raised below. Md. Rule, 1085. The judgment of the lower court on the evidence was not clearly erroneous. Md. Rule, 1086.

The appellant also contends that the failure of the State to produce all of the witnesses who testified before the grand jury which indicted him was a violation of his constitutional rights in that he was thus not confronted with the witnesses against him and in that their evidence was thus suppressed. This question was not raised at the guilt stage of the proceeding, although the appellant so complained to the court after the verdict and at the time he was sentenced. In any event, it is without merit. Under Md. Rule, 717, the names of the witnesses on whose evidence an indictment is based shall be endorsed thereon but there is no requirement, constitutional or otherwise, that they be called to testify by the State. Had the appellant desired their testimony he could have called them. The contention that by the State not calling them there was a suppression of evidence and a denial of the right of confrontation is frivolous.

In the appellant's brief eleven pages are devoted to questions, designated as raised "sua sponte" by him, set forth by his counsel verbatim at his request. Insofar as we are able to comprehend them they encompass matters pertaining to the sufficiency of the evidence and the production of witnesses, hereinbefore determined, the weight of the evidence, which is for the trier of facts, and questions not properly before us as not tried and decided by the lower court. While we appreciate the posi-

tion in which appointed counsel frequently find themselves in representing those accused of crime, we are constrained to remark that we see no compelling reasons to include in the brief, at the expense of the State, a verbatim discourse of the appellant of no merit to his appeal.

*Judgments affirmed.*