# ROBERT RAY JONES *v.* STATE OF MARYLAND

[No. 90, September Term, 1977.]

*Decided January 11, 1978.*

The cause was argued before *POWERS, MELVIN and MASON, JJ.

*Michael R. Malloy, Assistant Public Defender,* with whom

was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Steven Sacks, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MASON, J., delivered the opinion of the Court.

Appellant, Robert Ray Jones, was convicted by a jury in the Criminal Court of Baltimore of first degree murder, robbery with a deadly weapon (two counts) and several handgun violations. Appellant's principal assignment of error is that the trial court abused its discretion in denying his motion for severance.

According to the evidence adduced at trial, Danny Miller,[1] James Johnson and appellant met on December 26, 1975 and discussed committing a "stick-up" to obtain money for drugs. After driving around searching for a suitable place to rob, they proceeded to the Heritage Savings & Loan Association on Deepdene Road in Baltimore City. Johnson and Miller remained in the car behind the building, while appellant proceeded toward the savings & loan. Diana Hevesy, the branch manager, testified that at approximately 4:00 P.M., she and Linda Trueblood, a teller, were in a bullet proof office, when a man entered the building, pulled a gun and demanded she open the door of the office. Disregarding his order, she dropped to the floor and directed Trueblood to activate the alarm, whereupon the would-be robber fled. Subsequently, Trueblood selected appellant's photograph from an array of pictures and positively identified him in a line-up and at trial.

The threesome then decided to rob a pharmacy on 37th Street and Falls Road. They parked the car half a block away, and again appellant left the car and approached the pharmacy. A clerk testified that at approximately 5:30 P.M.

1. In exchange for Mr. Miller's testimony, the State agreed not to prosecute him for the homicide of Manuel Kolker.

a man entered the store and, after purchasing a pack of gum, "came up with a gun" and said "you know what this is." The gunman ordered Herman Glassband, the pharmacist, to surrender his wallet and open the register. Later, both the clerk and the pharmacist positively identified appellant in a police line-up and at trial.

After determining that the thirty dollars taken from the pharmacy was not enough to buy drugs, they drove to Ruby's Cut Rate Liquors on Greenmount Avenue and 30th Street. Mildred Sentz, an employee, testified that at approximately 6:30 P.M. a man entered the store to buy cigarettes, and, as she was about to hand them to him from behind a bullet proof window, he pointed a gun and demanded money. She immediately fell to the floor, hid behind a desk and called to the proprietor, Manuel Kolker. Sentz then heard three or four "bip-like" sounds [2] followed by a loud noise similar to a firecracker. She saw Mr. Kolker slump to the floor bleeding from the chest and head. Moments later Officer Michael Baptist, an off-duty Baltimore City Police officer, entered the store and saw Mr. Kolker lying in a pool of blood. At trial Officer Baptist positively identified appellant as the man he observed leaving the liquor store just before he entered.

According to Miller, when appellant returned to the car he stated that "he had to shoot the man" because the man tried to shoot him.

Appellant did not take the stand or offer any evidence in his behalf.

In this State joinder and severance of criminal trials are governed by Maryland Rule 745 c,[3] which provides:

> If it appears that any party will be prejudiced by the joinder for trial of counts, charging documents, or defendants, the court may, upon its own motion

---

2. Apparently, in Mr. Kolker's attempt to shoot the assailant, his gun misfired four times.

3. Joinder and severance of criminal trials had been governed by Maryland Rules.734 and 735 which were controlling when this case was tried and which, by the revision of Chapter 700, effective July 1, 1977, were consolidated into Rule 745. In pertinent part, the new rule is virtually identical to its precursors.

or the motion of any party, order separate trials of counts, charging documents or defendants, or grant any other relief justice requires.

Under this rule severance is committed to the discretion of the trial judge, and the purpose of the rule is to avoid prejudice before the fact by segmenting trials. *See* Note, *Joint and Single Trials Under Rules 8 and 14 of the Federal Rules of Criminal Procedure,* 74 Yale L.J. 553, 556 (1965). In *McKnight v. State,* 280 Md. 604 (1977), where there was a similar offense joinder, the Court of Appeals explicitly articulated the standard to guide the trial court in the exercise of its discretion when a motion for severance is made. The Court held "that a defendant charged with similar but unrelated offenses is entitled to a severance where he establishes that the evidence as to each individual offense would not be mutually admissible at separate trials." *Id.* at 612.

In determining whether the evidence of similar but unrelated offenses would have been mutually admissible in separate trials, the Court applied the "other crimes" rule as explicated in *Ross v. State,* 276 Md. 664, 669-70 (1976):

> The frequently enunciated general rule in this state, followed uniformly elsewhere, is that in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible . . . . This principle is merely an application of the policy rule prohibiting the initial introduction by the prosecution of evidence of bad character. Thus, the state may not present evidence of other criminal acts of the accused unless the evidence is "substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character."
>
> . . .
>
> There are exceptions to this general exclusionary

rule which, perhaps, are equally well-recognized. Thus, evidence of other crimes may be admitted when it tends to establish (1) motive, (2) intent, (3) absence of mistake, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of a crime on trial. . . . Additional exceptions have also been recognized: When the several offenses are so connected in point of time or circumstances that one cannot be fully shown without proving the other, and to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial. . . ; and to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. (Citations omitted).

*See generally,* C. McCormick, *Evidence,* § 190 (2d ed. 1972).

In *McKnight v. State, supra,* four similar but unrelated robberies were committed during a one month period in the same neighborhood where both McKnight and the victims lived. Three of the four victims were men in their late fifties or sixties; three of the victims identified McKnight; and the modus operandi of the assailants was similar in each robbery. The State argued that McKnight suffered no prejudice from the trial judge's refusal to grant a severance because the four offenses "were so nearly identical in method as to earmark the commission of those robberies as the handiwork of the appellant." *Id.* at 613. The Court found that the evidence offered did not come within the handiwork exception of the general exclusionary rule, and that the evidence offered to prove McKnight's guilt on each of the four robbery charges would not have been admissible against him had he been prosecuted in separate trials. The Court concluded that the denial of his motion for severance constituted an abuse of discretion. *See also United States v. Foutz,* 540 F. 2d 733 (4th Cir. 1976).

Not unlike *McKnight,* the State argues that the trial court

did not abuse its discretion in denying appellant's motion for severance because the evidence produced to prove appellant's guilt on each of the offenses would have been admissible at separate trials for the same offenses to establish appellant's motive and intent or a common scheme under the "other crimes" rule. Specifically the State contends that:

> From this evidence the jury could rationally infer that the three men devised a scheme of committing a robbery or robberies to secure enough money to be divided equally between them so that each of them could purchase drugs. It is clear that a rational inference could be drawn that the first two robberies were unsuccessful or only partially successful in that enough money had not yet been obtained for this purpose. Once the liquor store had been robbed, it was then that enough money was available to purchase drugs. Hence, the appellee submits that the various offenses were not unrelated but were admissible to establish a common scheme, motive and intent on the part of the three men including the appellant in furtherance of their preconceived plan to commit store or bank holdups to obtain sufficient money for the purchase of drugs.

Under the facts of this case, the State's reliance on intent and motive as a basis for admitting evidence of other crimes is misplaced. The fact that evidence may fit one of the certified exceptions to the "other crimes" rule does not mean that it is automatically admissible. The problem is one of balancing and not pigeonholing as discussed by Dean McCormick:

> [I]f the judges, trial and appellate, content themselves with merely determining whether the particular evidence of other crimes does or does not fit in one of the approved classes, they may lose sight of the underlying policy of protecting the accused against unfair prejudice. The policy may evaporate through the interstices of the classification.
>
> Accordingly, some of the wiser opinions

(especially recent ones) recognize that the problem is not merely one of pigeonholing but one of balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility.

C. McCormick, *Evidence,* § 190 at 453. (2d ed. 1972). *See Hoes v. State,* 35 Md. App. 61, 65-67 (1977); *Mollar v. State,* 25 Md. App. 291, 294 (1975). *See generally, United States v. Goodwin,* 492 F. 2d 1141, 1150 (5th Cir. 1974).

When appellant entered the three establishments, armed with a gun demanding money, his motive and intent were fairly obvious, and the admissibility of the other offenses with respect thereto was unnecessary and irrelevant to any contested issue in the case. *See generally,* Annot., *Admissibility in Robbery Prosecution of Evidence of other Robberies,* 42 A.L.R.2d 854 (1955). Although evidence of other crimes is admissible to show intent and motive, it was not needed nor admissible for such purpose in this case. Appellant's conduct was unequivocal, and his intent and motive could be inferred from his conduct alone. *People v. McKinney,* 24 N.Y.2d 180, 247 N.E.2d 244 (1969); *State v. Gilligan,* 92 Conn. 526, 103 A. 649, 652-53 (1918). Accordingly, we conclude this was not a permissible use of other crimes evidence because its prejudicial effect clearly outweighed its probative value.

We now turn to the State's argument that evidence of other crimes was admissible to prove a common scheme or plan. As mentioned in *Ross,* an exception to the "other crimes" rule is a "common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other." To prove a common scheme or plan, some relationship or connection between the crimes in question is required; mere similarity is not enough.

> The added element, then, must be, not merely a similarity in the results, but *such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.*

2 J. Wigmore, *Evidence,* § 304, at 202-03 (3d ed. 1940). (Emphasis in original). *See State v. Buxton,* 324 Mo. 78, 22 S.W.2d 635 (1929); *Atnip v. State,* 564 P. 2d 660 (Okla. Crim. App. 1977).

The evidence here discloses each robbery was separate and distinct and not so related to each other that proof of one tended to prove the other. If it were not for Miller's testimony that he, Johnson and appellant met and discussed committing a stick-up to obtain money for drugs, the facts in this case would be no different from those in *McKnight.* All that we have here is a series of similar but unrelated robberies which do not have the common features necessary to establish a common scheme. Each of the establishments robbed was randomly selected on the impulse of the moment without the existence of a preconceived plan. That the purpose of the robberies was to obtain money to buy drugs is too common an occurrence to evidence a common scheme or plan within the contemplation of the "other crimes" rule. Evidence merely showing a general scheme or plan to commit a stick-up to obtain money for drugs is no more than evidence of a general criminal disposition to commit a stick-up to acquire money, for any reason, rather than a specific purposeful plan which includes among its objects the specific crimes charged. This is the kind of prejudice the rule against admitting the evidence of other crimes was designed to prevent. *Ross v. State, supra.*

Even if we were to conclude, which we do not, that there was a common plan or scheme, the evidence of other crimes would not have been admissible in this case. One of the purposes for which evidence of other criminal acts may be offered is:

> To prove the existence of a larger continuing plan, scheme, or conspiracy, of which the present crime on

trial is a part. This will be relevant as showing motive, and hence the doing of the criminal act, the identity of the actor, and his intention, *where any of these is in dispute.*

C. McCormick, *Evidence,* § 190 at 448-49 (2d ed. 1972) (Emphasis supplied). Here motive, criminal agency, identity and intent were not in dispute. A plea of not guilty cannot, by itself, be construed as raising such a keen dispute on these issues as to justify the admission of this type of evidence. *United States v. Fierson,* 419 F. 2d 1020, 1022-23 (7th Cir. 1969). Consequently, the only real effect of such evidence is to prejudice appellant and add to the State's already sufficient evidence on these issues.

With regard to the State's actual need for evidence of other crimes, we agree with the following:

> That courts must guard against improper incursions on the general rule against admitting other-crimes evidence is so critically important, of course, not because such evidence has no probative value, but for the very reason that such evidence may have very substantial strength — not cognizable in law — in establishing a defendant's identity in the minds of the jurors. This Court has never hesitated to approve the admission of other-crimes evidence when that evidence has been relevant under one of the exceptions to the general rule. We have recognized, however, and we must continue to recognize, that the various categories of exceptions — intent, design or plan, identity, etc. — are not magic passwords whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in their names. To the contrary, each exception has been carefully carved out of the general rule to serve a limited judicial and prosecutorial purpose.

*United States v. Goodwin, supra,* 494 F. 2d at 1155.

Accordingly, we conclude that appellant was sufficiently prejudiced by the joinder of the offenses in question, and that the denial of his motion for severance constituted an abuse of discretion.

Appellant additionally contends that his conviction of and sentence for felony murder and the attempted robbery and handgun convictions violated the prohibition against double jeopardy. *Newton v. State,* 280 Md. 260 (1977).

Because we remand this case for new, separate trials, we need not reach this issue. On retrial, however, the trial court should consider this issue in light of *Frye v. State,* 37 Md. App. 476 (1977).

> *Judgments reversed.*
> *Case remanded for new trials.*
> *Costs to be paid by Mayor and City*
> *Council of Baltimore.*